Commonwealth ex rel. Logue *v.* Logue,
Appellant.

Argued November 14, 1960.   Before RHODES, P. J.,
GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and
MONTGOMERY, JJ.

*Richard H. Scobell,* for appellant.

*Barney Bernard,* for appellee.

OPINION BY MONTGOMERY, J., December 15, 1960:

This appeal concerns the custody of Gerald Eugene Logue, aged nine, and Danny W. Logue, aged seven, the children of Samuel Eugene Logue and Coral Logue. The Logues were married on May 12, 1950, separated permanently in June, 1956, and Coral Logue received a decree in divorce on April 18, 1959, on the grounds of cruel and barbarous treatment and indignities to the person. During the coverture of their marriage three children were born, the two above named and Michael Lee Logue. The custody of Michael is not involved in this case.

By order dated February 16, 1957, the custody of all three minor children was awarded to Coral Logue, with certain visitation rights being given to Samuel Logue. Between then and now the children have constantly resided with their mother.

On April 13, 1960, Samuel Logue abducted the two children from their school in North Clymer, New York, and at a resulting hearing was adjudged in contempt of court and ordered to return the children. The two children were forthwith returned to their mother and Mr. Logue filed a petition for writ of habeas corpus seeking a permanent transfer of custody. Two hearings on said petition followed and, as a result, the court, being convinced of the superior home life the children would enjoy in their father's household in

Erie, ordered the transfer of custody of the two children to Mr. Logue.

The question in this case is whether the "tender years" doctrine should have been applied by the lower court and the children permitted to remain in the custody of their mother or whether there is a factual basis for the application by the lower court of the "best interest" doctrine and a transfer of custody of the children to their father. The solution of this question requires a detailed study of the facts and testimony presented by the record. A discussion of this evidence is necessary to determine which of the diametrically opposed positions of the parents the law establishes as the most beneficial to the welfare of the children.

The appellee alleges neglect of the children on the part of the mother, in that, (1) a scalp condition was permitted to exist, (2) the children were left in the care of a teen-age baby sitter during the day, (3) in February of 1960 the mother gave birth to an illegitimate child, which child lives in the mother's household, (4) the children were unkempt and dirty, (5) they used foul language, and (6) on one occasion they stole money from their mother.

There is evidence, which is corroborated by the appellant, that the older boy, Gerald, did have a slight eczema of the scalp, but there was no showing of negligence in caring for this condition. Some former neighbors testified that they recalled seeing the boy's hair in an unclean condition on occasion; however, this was refuted by the boy's teacher, who saw Gerald every day, and by the baby sitter, who testified that she had seen the mother wash her sons' hair frequently and that they were always clean.

It is true that the appellant employs a housekeeper to assist her with the care of her children while she is working; however, Coral Logue's working hours very closely approximate the school hours of the two older

boys, custody of whom is sought in this case, and allow her to be with them through the late afternoon, dinner hour, the entire evening, and all week end. The eighteen-year old housekeeper, who is characterized by the lower court as a "fine young lady," lives with Mrs. Logue during the entire week. It appears that Mrs. Logue is with these children as much as a normal non-working mother would be. It is well established that a mother should not be deprived of the custody of her child of tender years because she is compelled to work for a living. *Commonwealth ex rel. Carpenter v. Carpenter,* 189 Pa. Superior Ct. 297, 150 A. 2d 724; *Commonwealth ex rel. Chumard v. Chumard,* 168 Pa. Superior Ct. 188, 77 A. 2d 660. Mr. Logue and his present wife both are employed on a shift basis. They stated that they alternate shifts when the two boys are with them. This arrangement would seem to constitute a split shift parentage, one sleeping while the other works. The lower court completely ignored the fact that the present Mrs. Logue also is a full-time employee, at the Hammermill Paper Company.

It is also true, as appellee sets forth, that, after she had been granted a divorce from Samuel Logue, Carol Logue gave birth to an illegitimate child, which child lives in the mother's household. Although this conduct was certainly reprehensible, the accepted rule in cases of this kind is that a lapse from moral standards is not a controlling factor where the parent is not otherwise at fault and where the lapse does not involve the treatment and care of the children. *Commonwealth ex rel. Horton v. Burke,* 190 Pa. Superior Ct. 392, 154 A. 2d 255; *Commonwealth ex rel. McMenamin v. McMenamin,* 171 Pa. Superior Ct. 524, 90 A. 2d 398; *Commonwealth ex rel. Blatt v. Blatt,* 168 Pa. Superior Ct. 427, 79 A. 2d 126; *Commonwealth ex rel. Bock v. Bock,* 159 Pa. Superior Ct. 159, 48 A. 2d 133; *Commonwealth ex rel. Martocello v. Martocello,* 148 Pa. Superior Ct.

562, 25 A. 2d 855. There is no evidence here of any improper behavior subsequent to this one admitted lapse from moral standards and there is no attack upon the mother's present moral qualifications as a parent.

The appellee claims that the children are always unkempt and dirty and that they had bad teeth and bad coughs. The only evidence of these assertions is the testimony of the appellee and his present wife. One witness for the appellee, a former neighbor of Coral Logue when she lived in Erie and who appeared to be a close friend of the appellee and his present wife, testified that the boys were dirty when she saw them playing. Another witness for the appellee testified only as to the pleasant condition and desirability of the neighborhood of the appellee. She, however, admitted that she had seen the Logue children only on a few occasions, that they were no different from any other children, that her own children and the Logue boys had been playmates, and that she had never heard the children use any vile language. No mention was made of any ill health or slovenly appearance.

The other two witnesses for the appellee had not seen the Logue children for one and one-half years and stated only that they were in need of hair washing and haircuts at that time. The one witness characterized the Logue boys as very nice little boys.

In refutation of the testimony presented by the appellee, a neighbor of Coral Logue testified that she was in Coral Logue's home at least once or twice a week, that it was always neat and clean, that the children were dressed neatly when they went to school, that their clothes were clean, that they did not have any cough and seemed to be in normal health, and that they seemed to be well liked by the neighbors. Another witness for the appellant was Gerald Logue's school teacher, who described him as a very fine boy with

above average intelligence and excellent grades, that he was clean and wore what the average child wears to school, that his health was excellent and he had not missed a day of school, and that he was respectful towards adults and had never been heard to use any vile language. She further testified that Coral Logue's home was not shabby or dirty. Appellant's stepsister testified that the home was clean and that Coral Logue was an ideal mother, proud of her children. Appellant's housekeeper testified that the children were well cared for and well fed, that she had noticed no signs of ill health or disease, and that they presented no disciplinary problem.

The report cards of the Clymer Central School for the boys were introduced into evidence, wherein health and personal habits, work habits and social attitudes are set forth in detail and show completely satisfactory records for both Gerald and Danny.

It is shown by the testimony of Mr. Logue, elicited by the court, that there existed over $400.00 in arrearages on the support order. Therefore, if there is any neglect in providing the children with new shoes and clothes, the appellee is at least partly responsible and can not complain.

Unless compelling reasons appear to the contrary, a child of tender years should be committed to the care and custody of its mother, by whom the needs of the child are ordinarily best served. *Commonwealth ex rel. Schofield v. Schofield,* 173 Pa. Superior Ct. 631, 98 A. 2d 437; *Commonwealth ex rel. Lamberson v. Batyko,* 157 Pa. Superior Ct. 389, 43 A. 2d 364.

One of the strongest presumptions in our law is that a mother has a prima facie right to her children over any other person. *Commonwealth ex rel. Harry v. Eastridge,* 374 Pa. 172, 97 A. 2d 350; *Commonwealth ex rel. Minnick v. Wilson,* 159 Pa. Superior Ct. 230,

48 A. 2d 27; *Commonwealth ex rel. Williams v. Price,* 167 Pa. Superior Ct. 57, 74 A. 2d 668. In the recent case of *Commonwealth ex rel. Horan v. Horan,* 193 Pa. Superior Ct. 193, 163 A. 2d 673, this Court upheld the mother's custody of two boys aged eleven and eight, even though there was a question of indiscretion on the part of the mother and the boys had requested to remain with their father.

Gerald Eugene Logue and Danny W. Logue, nine and seven years old respectively, are certainly within the age category defined by the "tender years" doctrine and, therefore, should be under the care and custody of their mother unless some compelling reason indicates the contrary. *Commonwealth ex rel. Mann v. Mann,* 181 Pa. Superior Ct. 438, 124 A. 2d 432; *Commonwealth ex rel. Skurat v. Gearhart,* 178 Pa. Superior Ct. 245, 115 A. 2d 395.

The lower court recognized that these children were within this doctrine when it stated in its opinion, "While boys, nine and seven years old, are still to be considered young, yet it will not be long before they will be growing out of what may be designated as 'the tender years', and it has always been our thought as boys grow older they will be needing a father much more than while they are in their tender years under maternal care and influence."

However, in its order the lower court assumed that the children presently have arrived at an age where the doctrine would no longer apply and based its decision on relative economic advantages and superior environment of the father's home without establishing neglect, misconduct, incompetence, or any other reason why the mother should be deprived of the custody of her children.

A mother should not be deprived of custody when children are of tender years because a better home or

higher standard of living or superior advantages can be supplied by the father. *Commonwealth ex rel. George v. George,* 167 Pa. Superior Ct. 563, 76 A. 2d 459; *Commonwealth ex rel. Cooper v. Cooper,* 167 Pa. Superior Ct. 492, 75 A. 2d 609; *Commonwealth ex rel. Levinson v. Levinson,* 162 Pa. Superior Ct. 563, 59 A. 2d 625.

We therefore conclude that for the present Gerald Eugene Logue and Danny W. Logue should remain in the custody of their mother, with liberal visitation rights to Samuel Logue until such time as they are no longer covered by the "tender years" doctrine and can reasonably express a preference of their own.

Although the power of this Court to review proceedings relating to the custody of children as given by the Act of July 11, 1917, P. L. 817, 12 P.S. §1874, has been tempered somewhat by *Commonwealth ex rel. Harry v. Eastridge,* supra, wherein it is stated that the hearing Judge is better able to pass on the credibility of witnesses and the weight of their testimony, we have no serious difference in this case with the able and experienced hearing Judge on the facts. Our difference is in our views of the relative values of the "tender years" and the "economic benefit" doctrines applicable to this case. It is our opinion that the lower court should have placed more importance on the "tender years" doctrine under the facts presented in determining what constitutes the best interests of the children.

Order reversed and custody of Gerald Eugene Logue and Danny W. Logue is awarded to the mother Coral Logue for an appropriate order by lower court allowing relator frequent visitation privileges.

WRIGHT and ERVIN, JJ., would affirm on the opinion of the lower court.